[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of New Haven. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant whose maiden name is Joyce S. Robinson were married on November 8, 1968 in Southington, Connecticut. The plaintiff has resided continuously in the state of Connecticut for at least 12 months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are two adult children issue of this marriage. The defendant does not have any minor children. There are no minor child issue of this marriage. Neither party has received state assistance.
The parties are in dispute as to the cause of the breakdown of their marriage. From the evidence presented the court finds that the defendant is the cause of the breakdown of the marriage.
The plaintiff was born on May 10, 1947. He has multiple sclerosis having been diagnosed in October 1996. It is a debilitating disease for which there is no cure and the effects will get worse while he gets older. He is constantly tired and fatigued. He has pain in his knees and hip and problems walking. CT Page 11009 He has blurred vision when he gets tired. He has had these symptoms on and off for approximately 10 years. The plaintiff is in constant pain and has problems sleeping. He is presently unable to work and receives social security usability, and also receives long term disability from his prior employment. His weekly social security is in the amount of $286.46. His long term disability is in the amount of $179.08 weekly less withholding of $27.69 for a combined net weekly income of $433.85. The plaintiff was previously employed at the Masonic Home and Hospital. He worked there for 16 years. When he was last employed there he was earning $19.24 hourly working 40 tours weekly. The plaintiffs long term disability income will terminate when he reaches age 62 on the May 2, 2009. His weekly social security income increases a small percentage inch year. The long term disability income remains at the present amount until it terminates a age 62.
The plaintiff takes various medications for his multiple sclerosis. He has medical insurance with a $10.00 co-pay per prescription. The Cobra costs for the plaintiff is $71.63 weekly. He will be eligible for Medicare at age 62. Medicare will not cover drugs that are injected. One of the two drugs that he presently takes by injection cost $11,000.00 annually and the second that he takes by injection costs $10,000.00 annually.
The last date that the plaintiff worked at the Masonic home was June 6, 1997.
The plaintiffs Cobra benefits commenced approximately June 20, 1997 and will terminate approximately June 20, 2000.
The parties own a 1996 Chevrolet van with a fair market value of $2,000.00 and a 1995 Chevrolet Baretta with a fair market value $6,500.00. The Baretta was purchased in October of 1995 for a total cost $13,100.00 with a $5,000 down payment that came from the plaintiffs father and a $2,500.00 down payment that came from the defendant's mother and $1,000.00 from bank accounts that the parties had with the balance of approximately $5,000.00 being financed. The plaintiffs financial affidavit dated June 19, 1999 shows life insurance with a face amount of $5,000.00. That is a typographical error as the correct face amount of the life insurance policy is $50,000.00. It has a cash surrender value of $5,000.00.
The plaintiff has weekly expenses that total $581.24. His son resides with him in the family home and pays for the telephone CT Page 11010 costs and the cable W.
The plaintiff has a pension plan through the Masonic Home. Its present value is $33,907.00. That value is increased by six to seven percent annually. He is able to commence to receive monthly payments on his pension plan of $645.51 based on a single life annuity option commencing at age 60. He is able to take the lump sum benefit at the present time. If the lump sum benefit is taken it is fully taxable unless put into another retirement plan. The six to seven percent annual increase on the pension plan is only until he reaches age 60.
The defendant vacated the family home on or about June 12, 1999 and has resided in Bristol, Connecticut ever since. She completed 10th grade of High School. She suffers from a heart murmur and has heart palpitations and problems with aches in her left arm. She commenced her present employment at Dynalock approximately May 1, 1999. She will have health insurance available to her if she continues at employment on or about August 1, 1999. The defendant also suffers from Hypoglycemia. She has a workers compensation claim pending as a result of having injured herself in June of 1998 while employed at the Bickford Family Restaurant. She estimates the value of that claim to be $5,000.00.
She had surgery for her shoulder injury from Bickford Family Restaurant on December 3, 1998. She will not receive a rating for that injury until on or about December 3, 1999. She suffered from a rotator cuff tear. She is now unable to do any heavy lifting, raking, shoveling or stretching to reach for items. She has been released from physical therapy and now does exercises at home. She is unable to presently handle a waitress job.
The defendant is employed at a factory presently earning $7.50 hourly. She has worked on and off throughout the marriage. Her gross weekly pay is $300.00 and her net weekly pay is $220.00. Her health insurance cost is $12.00 weekly. She also works overtime averaging $70.00 weekly with $16.00 in deductions for a net weekly overtime of $54.00 weekly and a total net weekly income of $274.00. She has liability totaling $4,974.00 consisting of attorneys fees of $2,334.00, Anthem Blue Cross/Blue Shield of $599.00 and Wallingford Dental Associates of $2,041.00. Her gross weekly expenses total $299.00
The defendant owns a 1987 Chevrolet Camaro with a value of CT Page 11011 $800.00 and a 1991 Nissan with a value of $4,700.00. She has $499.00 in her checking account.
The parties own a home located at 167 Cutlery Avenue, South Meriden, Connecticut. The parties have stipulated and the court finds that the fair market value of that property is $112,500. It has a mortgage with an approximate balance of $40,000 and an equity of approximately $72,500.
The parties also stipulated that the plaintiff shall be given a period of forty-five days to refinance the mortgage on the real estate and to pay the defendant her share of the equity, which amount shall be determined by the court. In the event that the plaintiff is unable to refinance, the real estate shall be listed on the market for sale within forty-five days following the date of dissolution and shall be sold. The division of the net proceeds from the sale of the real estate shall be determined by the court.
The parties agree to divide their personal property and furnishings.
The plaintiffs parents initially gave them a home. That home was sold by the parties one week later for $81,500.00 The parties then purchased the present home for $139,000.00 and financed it in part with a $64,000.00 first mortgage, and in part with the profit from the sale of the Cherry Street property. In 1992 the home was refinanced for $45,000.00 with a 30 year fixed mortgage. The plaintiffs father also gave the parties two separate $10,000.00 gifts over a two year period to help to reduce the principal balance of the mortgage.
This court has considered the provisions the section 46b-82
regarding the issue of alimony and has considered the provisions of section 46b-81 (c) regarding the issue of property division and has considered the provisions of section 46b-62 regarding the issue of attorneys fees.
The court enters the following orders:
A. BY WAY OF DISSOLUTION OF MARRIAGE
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried. CT Page 11012
B. BY WAY OF ALIMONY
 1. The defendant is ordered to pay to the plaintiff alimony in the sum of $1.00 per year.
2. Alimony is to terminate upon the death of the plaintiff or the death of the defendant or the remarriage of the plaintiff.
3. The provisions of section 46b-86 (a) and 46b-86 (b) are applicable.
C. BY WAY OF PROPERTY ORDERS
1. The trial stipulation entered into between the parties dated June 15, 1999 regarding the division of their personal property and belongings is approved of and orders are entered in accordance with that stipulation. The defendant is to remove from the family residence all items that are awarded to her under that stipulation by September 20, 1999.
2. The court awards to the defendant $29,000 as her share of the equity in the family home. In the event that the plaintiff is unable to refinance the family home so as to pay to the defendant the $29,000 by September 30, 1999, then the real estate is to be listed on the market for sale on October 1, 1999 and shall be sold. In the event the real estate is sold, then the net amount received from the sale shall be divided as follows: 60% of the net proceeds is awarded the plaintiff and 40% of the net proceeds then the plaintiff is solely responsible for keeping the mortgage payments current until such time as the property is sold. The court retains jurisdiction for any disputes involving the sale of the marital home.
3. The cash surrender value in the plaintiffs life insurance policy is ordered divided equally between the parties.
4. The defendant is awarded whatever sum that she receives from her pending worker's compensation claim.
5. The plaintiffs pension through the Masonic Home is ordered divided 60 percent to the plaintiff and 40 percent to the defendant by QUADRO. The court further orders that the plaintiff elect a lump sum payment distribution. In the event either party does not roll over the share awarded to that party into another CT Page 11013 pension plan then whatever taxes are due from said share are to be paid by the party who incurred the taxes as a result of not having rolled over said share into a new pension plan. The parties will equally share the costs involved to prepare theQUADRO. The court retains jurisdiction over any disputes involving the language of the QUADRO.
6. The checking account shown on the plaintiffs financial affidavit is awarded to the plaintiff.
7. The checking account shown on the defendant's financial affidavit is awarded to the defendant.
8. The two motor vehicles shown on the plaintiffs financial affidavit are awarded to the plaintiff and the two motor vehicles shown on the defendant's financial affidavit are awarded to the defendant.
9. The plaintiff is to cooperate in making COBRA benefits available to the defendant at her sole cost and expense.
10. The plaintiff is to pay the liability shown on his financial affidavit and hold the defendant harmless and the defendant is to pay the liabilities shown on her financial affidavit and hold the plaintiff harmless.
D. ATTORNEYS FEES
1. No attorneys fees are awarded in favor of either party.
E. MISCELLANEOUS ORDERS
1. The plaintiff is to prepare the judgment file within 30 days and send it to counsel for the defendant for signature and filing.
2. The parties are to exchange copies of their federal and state income tax returns for so long as there is an outstanding alimony order or any arrearage thereto.
Sidney Axelrod, Judge of the Superior Court